```
         UNITED STATES DISTRICT COURT FOR THE
               DISTRICT OF NEW HAMPSHIRE
```

William Schomburg

    v.                                    Civil No. 06-cv-177-JD
                                          Opinion No. 2007 DNH 128

Dell, Inc.

## O R D E R

William Schomburg brings claims against his former employer, Dell, Inc., alleging violations of the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"), along with state law claims of breach of contract, misrepresentation, wrongful discharge, and negligent infliction of emotional distress. Dell moves for summary judgment on all of Schomburg's claims. Schomburg opposes summary judgment.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record.

See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party.  See id. at 255.

## Background[1]

Schomburg was employed as a systems engineer at Dell for more than nine years.  His job required travel during the work week, and weekend work was scheduled once per quarter.  Schomburg expressed dissatisfaction with the requirements of his job.  In 2004, following a merger of Schomburg's team with another Dell team, Schomburg's job also required more frequent weekend travel with little or no advance notice.

On April 14, 2005, Schomburg told his supervisor that the job related stress he was experiencing was too much.  He said that he would not work that weekend and resigned.  He later told his supervisor that he did not intend to resign but that he

---

[1] Schomburg lists facts that he contends are disputed with citations to the record.  To the extent he has not opposed the properly supported facts provided by Dell in his statement of material facts, those facts will be deemed to be admitted by Schomburg.  LR 7.2(b)(2).

wanted to take some time away and to look for another job within Dell. He asked to take accumulated sick leave and vacation time for that purpose, which was denied. Instead, he was told that he could apply for leave under the Family and Medical Leave Act ("FMLA").

Schomburg contacted UnumProvident Corporation, Dell's benefits plan administrator, about FMLA leave on April 18, 2005. He was approved for FMLA leave the next day. The FMLA approval letter from UnumProvident notified Schomburg about information needed to process the leave, the conditions pertaining to leave, and Dell's policy for continuing leave and returning to work. With respect to returning to work, the notice informed Schomburg that he would be required to submit certain documentation of his fitness to work before he could return to his job and that "failure or delay in the submission of fitness for duty information could result in the termination of your employment." The letter provided a "Fitness for Duty Certification."

Schomburg was treated by Dr. Miller for depression. Dr. Miller provided documentation that Schomburg was not able to return to his job at Dell. Dr. Miller advised Schomburg to find a different job that would be less stressful.

On June 29, 2005, Dell sent Schomburg a notice that he was approaching the end of his FMLA leave. That notice included a

table of steps Schomburg would have to take, with deadlines, contact persons, and telephone numbers, to notify Dell as to whether he would or would not be returning to work.  The notice also warned that failure to respond could result in termination.  Schomburg did not respond to the notice.  Schomburg states in his affidavit that he did not receive the leave exhaustion notice until weeks after it was mailed.  In his deposition, Schomburg stated that he did not remember when he received the notice.

Dell represents that Schomburg's leave expired on July 11, 2005.  That date is the last day of twelve weeks following the approval of his leave on April 19, 2005.  Dell's termination letter, however, states that Schomburg's leave began on April 20, which would make July 12 the last day of the leave.

On July 12, Dell's leave and disability advisor, Julie Lundquist contacted Schomburg's supervisor at Dell and the representative at UnumProvident to get a status report on Schomburg.  Lundquist found that Schomburg had not responded to the June 29 leave exhaustion notice, had not contacted the supervisor, and had not provided additional information to Unumprovident.

Schomburg represents that he talked to Victoria Musa, the Human Resources Director at Dell, on July 12, 2005.  He states that Musa "indicated that [he] was being terminated."  In his

deposition, however, Schomburg testified that Musa told him that "the process for termination has already begun.  As a result, Schomburg states, he "did not believe there was any point to reapplying or negotiating for [his] job."  Lundquist states that she called Schomburg twice on July 15 to ask about his plans.  Schomburg did not return her calls until July 21.

In a letter dated July 20, 2005, Dell notified Schomburg that he had been on leave since April 20, 2005, that his leave had expired, and that his employment was terminated because he had not responded to the exhaustion of leave notice.  The letter provided other information about termination.  Schomburg testified in his deposition that he was not terminated until he received that letter.

## Discussion

Schomburg contends that the circumstances of his termination violated the FMLA and the ADA and provide the basis for state law claims of breach of contract, misrepresentation, wrongful discharge, and negligent infliction of emotional distress.  Dell moves for summary judgment on the ground that the undisputed record evidence does not support Schomburg's claims.

A.  FMLA

Schomburg asserts that his employment at Dell was terminated because he took FMLA leave.  Dell states that Schomburg was terminated because he failed to return to work after his FMLA leave or, alternatively, to request and document the need for an extended leave.

The FMLA provides substantive rights and prohibits retaliation against those who exercise FMLA rights.  Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 330 (1st Cir. 2005).  An eligible employee is entitled to a maximum of twelve weeks of leave during a twelve-month period when leave is medically necessary.  29 U.S.C. § 2612; Engelhardt v. S.P. Richards Co., Inc., 472 F.3d 1, 3 (1st Cir. 2006).  "It is 'unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA].'"  Id. (quoting 29 U.S.C. § 2615).  "With limited exceptions, . . . upon the employee's return from a qualified leave, the employer must reinstate the employee to the same position or an alternate position with equivalent pay, benefits, and working conditions, and without loss of accrued seniority."  Colburn, 429 F.3d at 330.

It is undisputed that Schomburg did not return to work after his FMLA leave.  It is also undisputed that Schomburg did not

provide any of the information he had been told would be necessary for him to return to work.  Schomburg asserts that he was terminated on July 12, 2005, when he talked to Victoria Musa, Dell's Human Resources Director.  Based on that conversation, he contends that he was terminated during his FMLA leave and before the deadline to submit the documentation that would have allowed him to return to his job.

The record is somewhat unclear as to when Schomburg's leave began, which determines when it ended.  UnumProvident stated in the letter dated April 19, 2005, that Schomburg requested that his leave begin on April 19 and to continue until May 18, 2005.  That request was granted.  In the termination letter dated July 20, 2005, Dell stated that Schomburg had been on leave since April 20, 2005.  As that is the latest date used as the beginning of the leave period, that date is most favorable to Schomburg.  Based on a beginning date of April 20, the last day of Schomburg's leave would have been July 12, 2005.  Therefore, Schomburg's conversation with Musa occurred on the last day of his leave.

Schomburg does not dispute that the April 19 letter approving his request for FMLA leave provided important information about the leave including a warning that "failure or delay in the submission of fitness for duty information could

result in the termination of [his] employment." The leave exhaustion letter explicitly spelled out his obligations for returning to work and the deadlines for complying with those requirements. Although Schomburg claims not to have received that letter "until weeks after the date it was purported mailed," during his deposition he testified that he did not recall when he received the leave exhaustion letter. The certified mail receipt indicates that the letter was received by Schomburg's wife on July 11, 2005. Schomburg's notes on the letter also are dated July 11, 2005. The notes indicate that he sent the letter to his physician, Dr. Miller, on July 11. Therefore, Schomburg knew on July 11 that he had to comply with certain requirements to show that he was able to return to work.

Dr. Miller testified at his deposition that he never discussed with Schomburg whether he was able to return to his job at Dell and also testified that Schomburg would not have been able to return to that job. Dr. Miller did not complete any forms or documentation that would have allowed Schomburg to return to work. Julie Lundquist called Schomburg twice on July 15, but he did not return her calls until July 21. The termination letter was sent on July 20.

Schomburg relies on his conversation with Musa, as evidence that he was terminated during his leave. Schomburg testified at

his deposition that Musa told him that the termination process had begun.  Because of that, he did not believe there was any point in reapplying or negotiating for his job.  Schomburg has admitted, however, that he was not terminated until July 20.  He also has admitted that he did not intend to go back to his former job at Dell.

The record establishes that Schomburg had notice before the end of his FMLA leave that he had to provide certain documentation of his fitness to return to his job or of his need for an extended leave before the end of the twelve weeks of leave.  He did not comply with those requirements.  The record also establishes that he was not terminated from his job until July 20.  Further, he had decided not to return to his job at Dell before he was terminated on July 20.  Based on those undisputed circumstances, no trialworthy issue exists to support Schomburg's theory that Dell terminated him because he took FMLA leave.

B.  ADA

Schomburg alleged that he was a qualified individual with a disability within the meaning of the ADA.  He alleged that his disability was caused by major depression due to a family tragedy so that he was unable to work until July 10, 2005.  He also

alleged that he had "a record of disability and impairment and/or the Defendant Company regarded him as being substantially impaired and disabled." Am. Compl. ¶ 25.  He claimed that Dell violated the ADA by failing to provide reasonable accommodations "Plaintiff's know [sic] disability, or the perception of Plaintiff as having disabilities."  Id. ¶ 27.

In its motion for summary judgment, Dell asserts that Schomburg cannot show that he was disabled within the meaning of the ADA.  Dell points to evidence from Schomburg and Dr. Miller that he was able to do work, except not at the job he left at Dell.  Dell also asserts, albeit in a footnote, that there is no evidence that Dell erroneously believed that Schomburg was disabled.  In his objection to summary judgment, Schomburg argues that a factual issue exists as to whether Dell regarded Schomburg as being disabled and terminated him because of that erroneous perception.

> "Under the ADA, plaintiff is 'regarded as' disabled if he:
>
> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
> (3) Has none of the impairments defined in paragraph (h)(1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment."

Arrieta-Colon v. Wal-Mart P.R., Inc., 434 F.3d 75, 88 (1st Cir. 2006) (quoting 29 C.F.R. § 1630.2(l)).  To prove a "regarded as" claim, "the employee must demonstrate not only that the employer thought he was impaired in his ability to do the job that he held, but also that the employer regarded him as substantially impaired in either a class of jobs or a broad range of jobs in various classes as compared with the average person having comparable training, skills, and abilities."  Sullivan v. Neiman Marcus Group, Inc., 358 F.3d 110, 117 (1st Cir. 2004).

    Schomburg's FMLA leave was based on his inability to continue to do his specific job that required extensive and unpredictable travel because of the stress the job caused him.  He has not shown that anyone at Dell believed he was impaired by stress beyond what he himself claimed.  He also provides no evidence that anyone at Dell believed he was disabled from either a particular class of jobs or a broad range of jobs.  Therefore, no evidence has been provided to support Schomburg's ADA claim, and Dell is entitled to summary judgment.

C.   Breach of Contract and Misrepresentation

    Schomburg alleges that Dell agreed to provide him FMLA leave until July 13, 2005, and breached that agreement by terminating his employment on July 12.  He also alleges that Dell intentionally misrepresented that it would provide leave until

July 13.  As is discussed above, the record establishes that even if Victoria Musa told Schomburg on July 12 that the termination process had begun, he was not terminated until July 20, after the FMLA leave ended.  Therefore, Dell is entitled to summary judgment on both claims.

D.  <u>Wrongful Discharge</u>

In the amended complaint, Schomburg alleges in conclusory fashion that Dell terminated him "because he performed an act that public policy would encourage or refused to do something that public policy would condemn" and was "motivated by bad faith, malice or retaliation."  Am. Compl. ¶ 45 & ¶ 46; <u>see, e.g.</u>, <u>Lacasse v. Spaulding Youth Ctr.</u>, 154 N.H. 246, 248 (2006)("To succeed on [a wrongful discharge claim], a plaintiff must prove: [that] the termination of employment was motivated by bad faith, retaliation or malice; and (2) that she was terminated for performing an act that public policy would encourage or for refusing to do something that public policy would condemn.")(internal quotation marks omitted).

Schomburg now asserts that his wrongful discharge claim is based on his belief that he was terminated "because of a perceived disability (see above), in retaliation for his FMLA request, for his vocal opposition to the defendant in meetings or

for his high pay."[2]  Schomburg's belief is not sufficient to successfully oppose Dell's motion for summary judgment.  Fed. R. Civ. P. 56(e); Quinones v. Buick, 436 F.3d 284, 291 (1st Cir. 2006).  Instead, he must present competent evidence showing that a factual dispute exists as to the reason for his termination. See Anderson, 477 U.S. at 256.  Because Schomburg has failed to comply with the requirements of Rule 56(e), Dell is entitled to summary judgment on his wrongful discharge claim.

E.  Negligent Infliction of Emotional Distress

Schomburg alleged that Dell was aware of his "stress condition" and terminated him "for a reason that violates public policy and the FMLA."  Am. Compl. ¶¶ 49 & 50.  Dell moves for summary judgment on the grounds that Schomburg cannot prove that Dell was negligent or that he suffered from serious mental and emotional harm accompanied by objective physical symptoms.  In response, Schomburg merely argues that he experienced emotional distress and that it is for the jury to decide whether Dell was negligent.

---

[2] Previously, in response to Dell's motion to dismiss, Schomburg's wrongful discharge claim was dismissed to the extent he relied on a public policy to protect an employee from being terminated because of illness or disability.  Schomburg v. Dell, Inc., 2006 WL 2864048 at *2 (D.N.H. Oct. 4, 2006).

Under New Hampshire law, a claim for negligent infliction of emotional distress depends upon proof that the plaintiff suffered physical symptoms caused by his emotional distress.  <u>Palmer v. Nan King Restaurant, Inc.</u>, 147 N.H. 681, 684 (2002).  Proof that emotional distress caused physical symptoms requires expert testimony.  <u>Silva v. Warden</u>, 150 N.H. 372, 374 (2003).

Schomburg offers no evidence of any kind that he suffered physical symptoms caused by his emotional distress.  Therefore, he cannot prove his claim.  Dell is entitled to summary judgment on Schomburg's negligent infliction of emotional distress claim.

## <u>Conclusion</u>

For the foregoing reasons, the defendant's motion for summary judgment (doc. no. 33) is granted as to all claims brought in this case.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_/s/ Joseph A. DiClerico, Jr._
Joseph A. DiClerico, Jr.
United States District Judge

October 15, 2007

cc:  Kevin M. Fitzgerald, Esquire
     Christopher H. Hahn, Esquire
     Paul Lanagan, Esquire
     Bradley M. Lown, Esquire